Linda A. JOHNSON, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Brigitte C. Fiordigigli, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Veronica June West, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

James S. Cilione, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Wayne E. Evans, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

John J. Jurbala, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Richard G. Kipp, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Robert Brown, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Charles W. Lentz, Jr., Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Sandra Scalese, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Karen A. Clifford, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Joseph P. Bleznuck, Sr., Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Janet J. Barr, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Richard J. Farabaugh, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Barbara L. Huntzinger, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Melody Mahoner, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Regis G. Rothrauff, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

Marianne McLaughlin, Petitioner

v.

Unemployment Compensation Board
of Review, Respondent.

1096

Commonwealth Court of Pennsylvania.

Submitted Dec. 3, 2004.
Decided March 7, 2005.

Andrew McAneney, Philadelphia, for petitioners, Linda A. Johnson, Veronica West, and Robert Brown; Mark J. Shire, Monessen, for petitioner, Brigitte C. Fiordigigli; Jerry Schuchman, Roslyn, for petitioner, James S. Cilione; Christopher J. Osborne, Scranton, for petitioners, Wayne E. Evans, John J. Jurbala, Richard G. Kipp, Karen A. Clifford and Joseph P. Bleznuck; Wade A. Kagarise, Hollidaysburg, for petitioners Janet Barr and Charles W. Lentz; Edward J. Feinstein, Pittsburgh, for petitioner Sandra Scalese; Richard J. Farabaugh, petitioner, pro se; Ira H. Weinstock, Harrisburg, for petitioner Barbara L. Huntzinger; Melody Mahoner, petitioner, pro se; Regis G. Rothrauff, petitioner, pro se; Marianne McLaughlin, petitioner, pro se.

Maribeth Wilt–Seibert, Asst. Counsel, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

These 18 consolidated appeals involve former employees of Verizon (Employer) who accepted some form of a voluntary termination offer and who now assert the Unemployment Compensation Board of Review (Board) erred when it determined they were ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] (voluntary leave without cause of a necessitous and compelling nature).

After each claimant accepted a voluntary termination offer, each claimant applied for unemployment compensation benefits. Each claimant here was denied benefits and appealed. Separate hearings were held before different referees across Pennsylvania. Each claimant here was again denied benefits and appealed. Ultimately,

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

the Board denied benefits, usually adopting the referee's opinion. Each claimant now appeals to this Court.[2]

A significant fact common to all the consolidated appeals is the receipt of some financial benefit from Employer to accept the offered voluntary separation.[3] Common factual issues include whether a claimant's belief that his or her job is imminently threatened was well founded, and whether continuing work was available.

■ A legal issue common to all of the present appeals is application of Section 402(b) of the Law, "An employe shall be ineligible for compensation for any week ... (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." 43 P.S. § 802(b). Necessitous and compelling cause "results from circumstances which produce pressure to termi-

nate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *McCarthy v. Unemployment Comp. Bd. of Review*, 829 A.2d 1266, 1270 (Pa.Cmwlth.2003) (citations and quotations omitted).

This Court recently addressed unemployment compensation for employees who accepted voluntarily early retirement in *Renda v. Unemployment Comp. Bd. of Review*, 837 A.2d 685 (Pa.Cmwlth.2003). In *Renda*, which involved the same Employer, claimants accepted an early retirement incentive package offer. We noted,

In the context of corporate downsizing, the *critical inquiry* is whether the factfinder determined the circumstances surrounding a claimant's voluntary quit indicated a likelihood that fears about the employee's employment would materialize, that serious impending threats to

---

2. In unemployment compensation cases, our review is limited to determining whether constitutional rights were violated, errors of law were committed, or findings of fact are supported by substantial evidence. *Renda v. Unemployment Comp. Bd. of Review*, 837 A.2d 685 (Pa.Cmwlth.2003).

We note that "the capricious disregard standard of review," previously applicable where only the party with the burden of proof presented evidence and did not prevail before the administrative agency, is now "an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc., v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 203, 812 A.2d 478, 487 (2002). This standard will generally assume a more visible role on consideration of negative findings and conclusions. *Id.* Nevertheless, it is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority. *Id.* at 204, 812 A.2d at 487–88. Where a party does not argue that the fact-finder capriciously disregarded competent evidence, the standard is not applicable. *Sun Home Health Visiting Nurses v.*

*Workers' Comp. Appeal Bd. (Noguchi)*, 815 A.2d 1156 (Pa.Cmwlth.2003).

3. Details of the benefits package appear in some records, but not in others. Generally, management employees were offered a Management Voluntary Separation Program (MVSP) package that included: 1) a lump-sum payment of two weeks' pay times years of service; 2) an additional lump-sum payment of $15,000, $20,000, or $30,000, depending on career band; 3) an increase in pension benefits by five percent; 4) a prorated VIP incentive payment, based on business and individual/team performance; 5) preservation of low interest rates; 6) medical and life insurance benefits for one year; and 6) financial planning assistance. Non-management employees were offered an Enhanced Income Security Plan (EISP) package that included: 1) a lump-sum payment of $2,200 times each year of service, up to a maximum of $66,000; 2) an expense allowance of $750 per year of service, up to $3,750, for relocation costs, tuition or training costs, or job placement expenses; 3) a voluntary termination bonus of $10,000; 4) six months of continued medical coverage; 5) a pension enhancement of five percent; and 6) financial planning assistance.

her job would be realized, and that her belief her job is imminently threatened is well-founded.

*Id.* at 692 (footnote omitted)(emphasis added). We further summarized, "[S]peculation pertaining to an employer's financial condition and future layoffs, however disconcerting, does not establish the requisite necessitous and compelling cause...." *Id.* (quoting *Staub v. Unemployment Comp. Bd. of Review*, 673 A.2d 434, 437 (Pa. Cmwlth.1996) (citation omitted)).

In *Renda*, the claimants testified they accepted an enhanced income security plan (EISP) offer because of fears for their job security due to increased reliance on technology, lack of new hires, reductions in overtime, reductions in number of employees, and transfer of work duties. They further testified to rumors Employer planned to close some offices. We determined these factors were not enough to meet the claimants' burden, particularly where Employer did not inform any of the claimants they would be laid off and where continuing work was available to the claimants.[4]

■■ Another legal issue common to all the consolidated appeals is the burden of proof. An employee who voluntarily terminates his employment has the burden of proving the termination was necessitous and compelling. *Mansberger v. Unemployment Comp. Bd. of Review*, 785 A.2d 126 (Pa.Cmwlth.2001). Whether a voluntary termination was for cause of a necessitous and compelling nature is a question of law subject to this Court's review. *Eby v. Unemployment Comp. Bd. of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176 (1993).

Several claimants here argue that the Board erred in its findings and conclusions because Employer failed to prove continuing work was available for them. In many of these hearings Employer did not offer evidence. However, there is no authority for the proposition that an employer has any burden of proof with respect to a claim for benefits under 402(b). Indeed, the opposite is true. *See, e.g., Renda* (the employer's witness' testimony that continuing work was available was a factor in denying benefits); *Mansberger*, 785 A.2d at 129 ("There is nothing in the record to indicate that continuing work would not be available to Claimant...."); *Staub*, 673 A.2d at 437 (emphasis added)("[A] lack of suitable continuing work, either currently or at a discernible point in time, *together with* statements or actions of the employer showing a likelihood of imminent layoff, will certainly suffice" to demonstrate necessitous and compelling cause.); *Phila. Parking Auth. v. Unemployment Comp. Bd. of Review*, 654 A.2d 280 (Pa.Cmwlth. 1995)(the employer's lack of testimony that continuing work was available to the claimant, along with a host of other factors, led to our conclusion that the claimant demonstrated necessitous and compelling cause); *Peoples First Nat'l Bank v. Unemployment Comp. Bd. of Review*, 159 Pa. Cmwlth. 134, 632 A.2d 1014 (1993)(the employer's testimony that continuing work was available, along with the findings that claimant's belief a layoff was imminent was speculative and the employer did not inform the claimant his position would be eliminated, contributed to our decision to deny benefits); *Flannery v. Unemployment Comp. Bd. of Review*, 125 Pa. Cmwlth. 64, 557 A.2d 52 (1989)(noting the availability of continuing work as a factor, along with the speculative nature of the claimant's belief in his eventual termi-

---

4. For an overview of this Court's jurisprudence in this area, see *Renda*, 837 A.2d at 692–93.

nation and claimant's testimony about the employer's financial instability, in our decision to grant benefits). *Cf. Eby* (capricious disregard of evidence where only claimant offered testimony of impending threats to job, which was supported by written offer from employer).

 Thus, testimony by a claimant or an employer that continuing work was not available may amount to necessitous and compelling cause; however, it is not an employer's burden to come forth with evidence that continuing work was available. Rather, if an employer chooses to put forth evidence continuing work was available, that is a factor to be considered by the Board in determining whether the claimant's reason for terminating his employment was necessitous and compelling. If an employer chooses not to put forth evidence regarding continuing work, a claimant is not automatically granted benefits, because the burden remains on the claimant to demonstrate necessitous and compelling cause.

With that background, we turn to each claimant's arguments before this Court.

### I. Individual Claimants:

#### *Necessitous and Compelling Cause*

A number of claimants make the sole argument that the Board committed an error of law in concluding they failed to establish necessitous and compelling cause for terminating their employ. We address each in turn.

#### A. Linda A. Johnson, No. 964 C.D.2004

 Johnson worked for Employer for 24 years. In October 2003, Johnson received a letter from Employer's Human Resources department outlining the EISP that stated,

This is to inform you that your job is in a work group that is subject to a force adjustment. The Company, therefore, is offering you the opportunity to elect to leave the service of the Company and receive EISP benefits pursuant to the provisions in the collective bargaining agreement. You should understand that EISP elections will be granted to the extent necessary to relieve the surplus, in the order of seniority among those eligible employees.

Claimant's Exhibit 1. The EISP offer explained the financial incentives Johnson would receive if she accepted it (see note 3 above). Johnson accepted the EISP offer in November 2003 and applied for unemployment compensation benefits. The UC Service Center denied her benefits, and she appealed.

At the hearing before the referee (that Employer did not attend), Johnson testified her job responsibilities were being sent to North Carolina in March 2004. Notes of Testimony (N.T.) February 10, 2004 at 3, 9. Johnson felt she did not have a job. N.T. at 2. She noted Employer did not offer for her to relocate to North Carolina, nor did it offer her any other positions within Employer. N.T. at 3. She testified, based on her 24 years with Employer, she understood the words "surplus" and "force adjustment" in the EISP offer meant she did not have a job. N.T. at 4. Johnson testified she attempted to find out if her job would be available if she did not accept the EISP offer, but she did not receive an answer. N.T. at 10.

The referee found Johnson was not told her job would be eliminated if she did not accept the EISP. Referee Finding of Fact (F.F.) No. 5. The referee concluded Johnson did not meet her burden to demonstrate necessitous and compelling cause for terminating her employment and denied benefits. The Board affirmed.

On appeal, Johnson argues the Board erred in finding she did not prove necessi-

tous and compelling cause for terminating her employment. Specifically, Johnson argues she had no job because her work was sent to North Carolina.

We disagree, for several reasons. First, Johnson's own testimony demonstrates that her job was available to her for at least four months after her November 2003 retirement, through the March 2004 transfer of her job responsibilities to North Carolina. Thus, Johnson's job was not "imminently" threatened. *Gackenbach v. Unemployment Comp. Bd. of Review,* 51 Pa.Cmwlth. 475, 414 A.2d 770 (1980)(possibility of termination three or four months in the future not sufficient to create "imminent" threat to employment).

Second, the critical finding that Johnson was not told her job would be eliminated finds support in the record. Johnson testified her duties were being relocated. She also testified to her inference of job elimination based on the circumstances of lack of offers from Employer and certain words in the general EISP offer. However, she offered no direct evidence that her job would be eliminated, such as specific statements from the Employer. The fact-finder is not bound to draw the same inference as a claimant, and the fact-finder may rely on direct evidence, or the lack of it, in making its decision. Here, there is no error in the finding based on a lack of direct evidence of job elimination.

Further, more weight may be afforded to communications specific to the claimant than to general information disseminated to other employees. Thus, in *Renda,* the fact-finder determined the employer "never specifically told any of the Claimants they would be laid off. . . ." *Renda,* 837 A.2d at 691. Also, in *Staub* the fact-finder determined the claimant "was not informed that his job or department would be eliminated." *Staub,* 673 A.2d at 436. In both cases we found no error in the conclu-

sion that the claimants voluntarily left work without a necessitous and compelling reason.

Accordingly, we conclude the Board did not err in finding Johnson failed to prove necessitous and compelling cause for terminating her employment, and we affirm.

**B. Veronica June West, No. 1035 C.D. 2004**

■ West worked for Employer for 35 years at the time she accepted the October 2003 EISP offer. West applied for benefits, which were denied by the UC Service Center, and she appealed.

At the hearing before the referee, West testified she was a union member subject to the applicable collective bargaining agreement (CBA) between the union and Employer. F.F. No. 2. Employer's witness explained that under the CBA, West could not be laid off for five years. N.T. February 5, 2004, at 6–7; F.F. No. 2.

West testified she accepted the EISP offer because she felt her job was in jeopardy due to the surplus and increasing technology. N .T. at 3–5. She felt she would be laid off in the future at some time, and she wanted to leave when she decided. *Id.;* F.F. No. 5.

The referee concluded West did not demonstrate necessitous and compelling cause for voluntarily ending her employment. The Board affirmed.

On appeal, West argues she behaved reasonably in accepting the EISP because the record demonstrates she was going to be laid off if she did not accept it. West relies heavily on her assertion that she "had spoken to management and been directly told that she was going to be laid off if she did not accept the plan." West Brf. at 12. West asserts it was error for the referee to rely on Employer's witness' "unsubstantiated" and "obtuse reference to

some alleged contract" that supposedly protected West's job.

We are not persuaded by West's claim of direct evidence of her pending layoff. The only record reference to a direct statement from the Employer is in the following exchange:

R: Did somebody tell you you would be laid off?

C: Yeah, these papers [the EISP offer] said that we were gonna be laid off and also I was told by the management—

N.T. at 3. However, contrary to this testimony, the EISP offer does not inform West she will be laid off. Also, the claim that West was "told by management" is so lacking in detail that we discern no error in the fact-finder's refusal to accept it.

West's testimony regarding her fears about her future employment amounted to no more than speculation. As this Court held in *Staub*, the mere fact of the EISP offer is not enough to prove necessitous and compelling cause. Similarly, West's speculation that she would be laid off at some future time does not rise to the level of necessitous and compelling cause. *Flannery v. Unemployment Comp. Bd. of Review*, 125 Pa.Cmwlth. 64, 557 A.2d 52, 54 (1989)("Claimant attempts to justify his decision by arguing that his eventual layoff was inevitable, but such argument is purely speculative.").

Accordingly, we conclude the Board did not err, and we affirm.

## C. Wayne E. Evans, No. 1062 C.D.2004[5]

■ Evans was employed by Employer for 30 years at the time he accepted the Verizon Management Voluntary Separation Program (MVSP).[6] After his benefits were denied by the UC Service Center, Evans appealed.

At the hearing before the referee (that Employer did not attend), Evans testified he accepted the MVSP because it offered monetary enhancements he felt were as good as he would get. N.T. February 12, 2004 at 2; F.F. Nos. 3, 5–6. Evans feared a future layoff could affect his employment. N.T. February 12, 2004 at 2; F.F. No. 4. Evans testified his former position with Employer was not filled after his retirement. N.T. at 2.

On appeal, Evans argues he established necessitous and compelling cause for terminating his employment. We disagree. Evans offered no specific, direct evidence, such as communications from the Employer of an imminent threat to his job. Also, Evans offered no general direct evidence, such as the voluntary termination offer and explanatory documents. The circumstantial evidence on which he relies, failure to fill his position after his retirement, was unknown to Evans when he made his decision to accept the offer. *George v. Unemployment Comp. Bd. of Review*, 767 A.2d 1124 (Pa.Cmwlth.2001)(decision to accept voluntary termination must be scrutinized under circumstances existing at time of employee's decision). In this case, we discern no error in the Board's conclusion that Evans failed to carry his burden of

5. The same attorney represents claimants Evans, Jurbala, Kipp, Clifford, and Bleznuck on appeal to this Court, and one brief was filed on behalf of all five claimants. That brief's discussion of facts contains some facts that, while in the record of one or more of the five claimants, were not facts of record for others. Our factual discussion for each of the five

claimants considers only those facts that are of record for each individual claimant.

6. The record does not contain the documents offering Evans the opportunity to participate in the MVSP and explaining the terms of the MVSP to him.

proving necessitous and compelling cause to leave.

Evans also argues this Court should conclude Employer failed to prove continuing work was available to him. He seeks the ultimate conclusion that he had necessitous and compelling cause for terminating his employment, thereby justifying benefits. We disagree for two reasons. First, the referee found continuing work was available to Evans. F.F. No. 7. This finding is supported by Evans' own statement, on his Claimant Questionnaire, that continuing work, "[w]ould ... have been available had [he] not taken the employer's incentives." C.R. No. 3. Second, as previously discussed, the Employer has no burden of proof in a voluntary quit case. Thus, Employer's failure to offer evidence here does not support relief for Evans. Accordingly, we affirm.

### D. John J. Jurbala, No. 1063 C.D.2004

■ Jurbala worked for Employer for 33 years at the time he accepted the MVSP.[7] After his benefits were denied by the UC Service Center, Jurbala appealed.

At the hearing before the referee (that Employer did not attend), Jurbala testified he accepted the 2003 MVSP because of "negative aspects of staying." N.T. February 13, 2004 at 2–3. He testified, up until 2002, Employer used separation packages as a method of downsizing. N.T. at 2. However, in 2002, Employer offered a separation package and laid off anyone who was offered the package but chose not to accept it. *Id.* Jurbala said he asked his boss about future plans, and his boss replied, "[I]t's only going to get worse." N.T. at 3. Jurbala testified his previous position was not filled after he accepted the MVSP. *Id.*

The referee determined Jurbala feared for a future layoff if he did not accept the MVSP. F.F. No. 4–5. However, the referee determined Jurbala's fears were speculative and did not amount to necessitous and compelling cause. The referee denied benefits, and the Board affirmed.

On appeal, Jurbala argues he proved necessitous and compelling cause for terminating his employment. We disagree. As previously discussed, the fact-finder is not required to draw the same inference from the circumstances as that drawn by a claimant. This is especially true where, as here, the circumstances are not specific to the claimant's employment and relate to a prior offer. Further, the direct statement attributed to the Employer is, at best, lacking in detail and vague. We therefore discern no error in the fact-finder's failure to accept it.

As in *Renda,* Jurbala was never specifically told he would be laid off. As in *Renda,* we agree Jurbala failed to carry his burden of proof.

Jurbala also argues Employer failed to establish continuing work was available to him. As discussed, this argument fails because the Employer has no burden of proof. We therefore affirm.

### E. Richard G. Kipp, No. 1064 C.D.2004

■ Kipp was employed by Employer for 30 years when he accepted the MVSP.[8] After his benefits were denied by the UC Service Center, Kipp appealed.

At the hearing before the referee (that Employer did not attend), Kipp's only testimony about why he accepted the MVSP offer was as follows:

R. Okay. For the record, would you explain the circumstances that

---

7. The record does not contain the MVSP offer documents.

8. The record does not contain the MVSP offer documents.

prompted you to take the benefit package.

C. Well, the company offered an enhanced benefit package, which include (*sic*) a bump on your pension, plus a severance pay, and it's checking a few things, I'm only 52 years old, but it was an, it was an offer that, it was, no doubt about it, it was a good offer.

R. I thought you were going to say it was an offer you couldn't refuse.

C. Right.

R Alright. So you decided to take their offer?

C. Right. Right.

N.T. February 13, 2004 at 2. The referee found Kipp feared for a future layoff (F.F.Nos.4–5), but concluded his fear amounted to mere speculation. Accordingly, the referee denied benefits, and the Board affirmed.

■ On appeal, Kipp argues he had necessitous and compelling cause for terminating his employment. We disagree. Kipp offered no specific, direct evidence of communications or actions by Employer that his job was imminently threatened. In fact, he failed to offer general information from the Employer disseminated to other employees. Where, as here, the Employer did not specifically tell a claimant that he would be laid off, and continuing work was available, no error is evident in the conclusion that the claimant failed to prove his voluntary termination was compelled. *See Renda.*

Kipp also argues Employer failed to establish continuing work was available to him. We disagree for two reasons. First, Kipp admitted continuing work was available on his Claimant Questionnaire. C.R. No. 3. Second, as discussed, the Employer

has no burden to prove anything regarding this claim. We therefore affirm.

### F. Charles W. Lentz, Jr., No. 1080 C.D. 2004

■ Lentz was employed by Employer for 31 years when he accepted the MVSP.[9] After his benefits were denied by the UC Service Center, Lentz appealed.

At the hearing before the referee (that Employer did not attend), Lentz testified there were four managers in his location at the time the MVSP was offered. N.T. February 26, 2004 at 3; F.F. No. 3. Lentz testified he was informed the force was to be reduced by 75%, or three out of the four people. N.T. at 3; F.F. No. 4. Lentz explained the three other managers in his location accepted a voluntary separation plan,[10] which would have left him as the sole manager with responsibility for performing the work of four people. N.T. at 3–4; F.F. 5–6. Therefore, he decided to accept the MVSP, after the other three managers left, because he believed he would have had to do the work of four people. N.T. at 4; F.F. No. 6.

However, although Employer informed Lentz the management staff would be reduced by 75%, Lentz did not testify to any direct statements by the Employer about the remaining person's workload. *See generally*, N.T. at 3–4; F.F. No. 7. Also, Lentz testified if he did not accept the MVSP, he would *not* have been terminated. N.T. at 4. The referee concluded Lentz did not meet his burden to demonstrate necessitous and compelling cause for terminating his employment, and the Board affirmed.

---

9. The record does not contain the MVSP offer documents.

10. The record is unclear as to whether the other three managers accepted the MVSP or another voluntary separation plan.

Lentz's sole argument on appeal is that his fear about job security was reasonable and his employment was in imminent danger. Of particular import, Lentz does not argue the potential increase in workload was a substantial change in his work conditions to amount to necessitous and compelling cause for terminating his employment. *See, e.g., Broadus v. Unemployment Comp. Bd. of Review,* 118 Pa.Cmwlth. 196, 544 A.2d 1098 (1988)(benefits granted where employee testified she was performing the work of two people and was unable to balance the personal care aspects of one position with the supervisory aspects of the other). Such an argument is therefore waived.[11]

We discern no error. Lentz stated he would not have been terminated and there was plenty of work for him to do if he did not accept the MVSP. This belies his argument that his employment was in imminent danger. Accordingly, Lentz did not meet his burden to demonstrate cause of a necessitous and compelling nature, and we affirm.

### G. Karen A. Clifford, No. 1101 C.D.2004

■ Clifford was employed by Employer for 33 years when she accepted the MVSP.[12] After her benefits were denied by the UC Service Center, Clifford appealed.

At the hearing before the referee (that Employer did not attend), Clifford testified she accepted the MVSP because it was a handsome package. N.T. February 13, 2004 at 2. She alluded to an unspecified experience in 2001 that made her look at the package seriously. *Id.* She testified, "[N]obody really knows for sure what would have happened to me," but with the previous experience, she wanted "to be cared for." *Id.* She indicated her job was not filled after her retirement. *Id.*

The referee found Clifford feared for her job if she did not accept the MVSP, F.F. Nos. 4–5, but concluded her fear amounted to mere speculation. Therefore, the referee denied benefits, and the Board affirmed.

On appeal, Clifford asserts she established necessitous and compelling cause for terminating her employment. We disagree. There is nothing in Clifford's testimony to support a finding that her fears about her job would materialize. *Renda.* In particular, she offered no specific, direct evidence of a threat to her employment, such as statements by the Employer that she would be laid off. Rather, she admitted she did not know what would have happened to her job if she chose not to accept the MVSP. Where, as here, the Employer did not specifically tell a claimant that she would be laid off, and continuing work was available, no error is evident in the conclusion that the claimant failed to prove her voluntary termination was not compelled.

Clifford also argues Employer failed to establish continuing work was available to her. We disagree for two reasons. First, Clifford admitted continuing work was available on her Claimant Questionnaire. C.R. No. 3. Second, as explained, the Employer has no burden of proof in this case. Accordingly, we affirm.

### H. Joseph P. Bleznuck, No. 1102 C.D. 2004

■ Bleznuck was employed by Employer for 31 years. On October 1, 2003,

---

11. Moreover, we note Lentz's testimony did not make clear he would, in fact, be required to perform the work of four people. He did not testify Employer told him he would be taking over the other managers' work, only that he felt he would be responsible for their

work. N.T. at 3–4; F.F. No. 7. His belief he would be required to perform all four managers' work was mere speculation.

12. The record does not contain the MVSP offer documents.

Employer sent Bleznuck an MVSP offer stating,

> We are pleased to inform you that you are among a group of employees who are eligible to volunteer for a reduction in force (RIF). You have 45 days to consider volunteering, with all volunteer forms required by 11:59 p.m. on November 14, 2003. Should you volunteer, your last day on payroll as an employee will be November 21, 2003.

C.R. No. 6. The MVSP offer went on to explain the enhanced benefits available to those who accepted it. *Id.* Bleznuck accepted the offer and thereafter applied for unemployment compensation benefits. After his benefits were denied by the UC Service Center, Bleznuck appealed.

At the hearing before the referee (that Employer did not attend), Bleznuck testified to a long history of veiled threats from Employer about downsizing and losing jobs. N.T. February 20, 2004 at 2. He testified he, as a manager, was not protected by a union contract. *Id.* He noted Employer was required to bring back a number of unionized employees previously laid off, after which Bleznuck felt management was "marked" to be terminated. *Id.*

Bleznuck felt his job was in jeopardy because he was the man with the least seniority in his management group. *Id.* He felt if he did not take the offer, he would lose his job anyway at some point. N.T. at 3. Bleznuck testified eight of his peers left and were replaced with three people. *Id.* Bleznuck admitted he did not have to accept the MVSP offer, but he "figured [he] was going to be out the door." N.T. at 4.

The referee found Bleznuck did not demonstrate necessitous and compelling cause for terminating his employment and denied benefits. The Board affirmed.

On appeal, Bleznuck argues his fears about his job were real and substantial such as to amount to necessitous and compelling cause. We disagree. Bleznuck failed to offer specific, direct evidence, such as statements by the Employer that he would be laid off. Further, his own testimony indicates three people continue to perform the work he was doing for Employer. Nothing in the record indicates Bleznuck could not have been one of those people. On this record, we discern no error in the Board's conclusion that Bleznuck failed to carry his burden of proof. *See Renda.*

Bleznuck also argues Employer failed to establish continuing work was available to him. We disagree for two reasons. First, Bleznuck admitted continuing work was available on his Claimant Questionnaire. C.R. No. 2. Second, as previously discussed, the Employer has no burden to prove anything with regard to this claim. We therefore affirm.

## I. Janet J. Barr, No. 1136 C.D.2004

 Barr worked for Employer for more than 34 years when she accepted the MVSP.[13] After her benefits were denied by the UC Service Center, Barr appealed.

At the hearing before the referee (that Employer did not attend), Barr testified she accepted the MVSP due to a "climate of fear" at Employer. N.T. February 6, 2004 at 12; F.F. No. 4. She testified the fear came, in part, from a long history of reductions in force by Employer dating back to 1973. N.T. at 12. She explained, in 2003, the unionized employees were given a five-year contract with a no-layoff provision. N.T. at 12–13. Therefore, when Employer announced a reduction in force, she felt the "handwriting [was] on the wall" for management employees such

---

**13.** The record does not contain the MVSP offer documents.

as herself. N.T. at 13. She further testified, due to new technologies, the message she got was she would be out of a job once the new technology was deployed, which she anticipated would be in 2004. *Id.;* F.F. No. 4.

Barr testified Employer did not give her any specific information about whether her job would still be available to her if she did not accept the MVSP. N.T. at 17; F.F. No. 5. She felt she was expendable because she was administrative, there were people in her position earning less than she, she was one of the oldest employees at age 57, and she was a single woman. N.T. at 18.

The referee concluded Barr did not meet her burden to demonstrate necessitous and compelling cause for terminating her employment, and the Board affirmed. Barr's sole argument on appeal is her fear about job security was reasonable and her employment was in imminent danger.

We disagree. Barr's testimony amounts to speculation about her future job prospects. Of significance, the referee found Employer did not tell her she would be laid off if she did not accept the MVSP. This finding was based on Barr's testimony. Further, the circumstances from which Barr drew her inference of job threat, including new technologies, previous reductions in force, and a "climate of fear" are similar to those which did not compel a determination of necessitous and compelling cause in *Renda.*[14] Accordingly, we conclude Barr did not meet her burden to show cause of a necessitous and compelling nature, and we affirm.

### J. Melody Mahoner, No. 1235 C.D.2004

▮▮▮▮▮ Mahoner worked for Employer for approximately seven years when she accepted an offer to participate in the MVSP.[15] After her benefits were denied by the UC Service Center, Mahoner appealed.

At the hearing before the referee (that Employer did not attend), Mahoner testified her job as a software engineer/tester was outsourced to India at the end of 2002. N.T. February 10, 2004 at 2–3. Following the outsourcing, Mahoner worked on some projects, but those ended, and she had no work to do at the time the MVSP was offered to her. N.T. at 3, 7. Mahoner testified she tried to obtain work on other projects but she was not told any other projects would be forthcoming. *Id.*

Mahoner testified she accepted the MVSP because, "I knew that I was one of those people slated for reduction in force, because I didn't have the work to do." N.T. at 4. Mahoner clarified no one told her she would be laid off if she did not accept the MVSP, and she did not know what would have happened if she did not accept it. N.T. at 4, 9. However, even though Employer allowed her to continue to come to work and receive a paycheck despite her lack of work, she did not know how much longer that would last. N.T. at 8–9. Mahoner stated the "writing on the wall was saying that my job was going and I didn't know where my position was in the company." N.T. at 10. Mahoner testified she applied for and received another position within Employer; however, her current department would not let her leave to accept the other position. N.T. at 5.

14. In *Renda,* the claimants testified they were anxious about their job security due to, among other things, increased reliance on new technology, reductions in the number of employees in their departments, and rumors

about closing offices. *Renda,* 837 A.2d at 690–91.

15. The record does not include the MVSP offer documents.

The referee found continuing work was available for Mahoner. F.F. No. 7. He concluded Mahoner did not demonstrate necessitous and compelling cause for terminating her employment, and continuing work was available to her. Accordingly, he denied benefits, and the Board affirmed.

On appeal, Mahoner represents herself. She argues her fears of losing her job were well-founded, and she challenges the finding that continuing work was available.

Mahoner's case is different from the others involved in these consolidated appeals because she did not have any work to do at the time the MVSP was offered. Further, when she obtained another position within Employer, she was not permitted to leave her current position. Rather than transfer Mahoner to a position with work to perform, Employer chose to keep her in a position where duties were transferred overseas and where there was no work to perform.

The finding that continuing work was available to Mahoner is not supported by competent evidence. The only support for the finding is in a document submitted by Employer and received without explanation or objection. C.R. No. 2. The document, a written statement offered to prove the truth of its contents, is hearsay. Pa. R.E. 801.

■ While hearsay may support a finding of fact in an unemployment compensation case, it may only do so if it is corroborated by other competent evidence of record. *Walker v. Unemployment Comp. Bd. of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976). Under this so-called "Walker" rule, a finding of fact based solely on unobjected-to hearsay may not stand. *Id.* Therefore, the finding that continuing work was available to Mahoner cannot stand, as it is based solely on hearsay.

■ As noted in *Staub*, "a lack of suitable continuing work, either currently or at a discernible point in time, together with statements or actions of the employer showing a likelihood of imminent layoff, will certainly suffice" to demonstrate necessitous and compelling cause. *Staub*, 673 A.2d at 437. Here, Mahoner lacked suitable work at the time she accepted the MVSP. That lack, combined with Employer's refusal to transfer her to a working position, is sufficient to amount to a serious impending threat to Mahoner's employment. We note this evidence is specific to Mahoner's job, sufficiently detailed and unambiguous. Further, the situation existed at the time Mahoner accepted the offer.

The fact-finder did not make a specific credibility determination, although it based other findings on Mahoner's testimony. If her testimony on this point is accepted, it would support a conclusion of compelling cause for voluntarily leaving employment.

Error is present because an important finding is not supported by competent evidence. Also, no credibility determination was made on the significant evidence of lack of work. Accordingly, we vacate and remand for the limited purpose of allowing the Board to make a credibility determination on Mahoner's testimony of no work. If found credible, the Board shall grant benefits.

## II. Individual Claimants:

### *Additional Arguments*

A number of Claimants make different arguments in addition to arguing the Board committed an error of law in concluding they failed to establish necessitous and compelling cause for terminating their employment. We address each in turn.

## A. Brigitte C. Fiordigigli, No. 996 C.D. 2004

 Fiordigigli was employed by Employer for seven years at the time she accepted the October 2003 EISP offer. F.F. No. 1. Fiordigigli applied for benefits, which were denied by the UC Service Center. She appealed.

At the hearing before the referee, Fiordigigli testified, "My primary reason for taking this offer was due to being on an attendance plan that both my illnesses and illnesses of my son caused me to be on." N.T. February 4, 2004 at 9. Fiordigigli explained her understanding was Verizon had a 5–Step disciplinary plan, with Step 5 meaning termination. N.T. at 9–10. She testified she was on Step 3 at the time she accepted the EISP. N.T. at 19.

Fiordigigli testified, because she was on Step 3, if she missed work again she would be moved to Step 4, which included a one-year probation, a ten-day suspension, and the possibility of dismissal. If there were further absences during the one-year probationary period, she would be moved to Step 5, which was dismissal. N.T. 9–10. Fiordigigli testified, based on the family illnesses, she believed she would be terminated for attendance plan violations. N.T. at 20. In response, the Employer's witness testified no employee was ever terminated on Step 4 in Fiordigigli's office. N.T. at 25.

The referee determined Fiordigigli's fears about future termination were not necessitous and compelling cause to end her employment. Benefits were denied. The Board affirmed.

On appeal, Fiordigigli argues the referee's failure to make a specific finding about whether the circumstances surrounding her accepting the EISP would compel a reasonable person to act in the same manner requires remand.

We disagree. We note the referee specifically found Fiordigigli's stated reason for accepting the EISP, her fears for her future employment given her absentee situation, did not constitute necessitous and compelling cause. As explained, that is the critical inquiry in Section 402(b) cases. Here, the Board need not make a separate finding about how a reasonable person would have acted in the same circumstances.

Fiordigigli also argues the Board erred in determining she did not have necessitous and compelling cause for terminating her employment. We disagree with her argument. Fiordigigli did not present any evidence, direct or circumstantial, that her job was imminently threatened. Rather, testimony from Fiordigigli and Employer's witness established she was two disciplinary steps away from termination. Accordingly, Fiordigigli did not establish an imminent threat to her job. *See, e.g., Gackenbach* (possibility of future termination does not amount to necessitous and compelling cause). We affirm.

## B. James S. Cilione, No. 1057 C.D.2004

 Cilione worked for Employer for 37 years at the time he accepted the MVSP.[16] After his benefits were denied by the UC Service Center, Cilione appealed.

At the hearing before the referee (that Employer did not attend), Cilione testified he was not fired from his job, rather he accepted the MVSP because he, "felt that my job was gone, and I had no other choice but to accept it." N.T. February 19, 2004 at 3. Cilione testified in the three years prior to the MVSP offer, his job changed three times, each time taking him

---

**16.** The MVSP offer documents are not included in the record before us.

farther from home with more responsibilities. N.T. at 4.

Cilione asked if his job was secure, and his supervisor told him no job was secure but Employer would backfill 25—30% of the jobs. *Id.* Cilione testified he knew in his heart he did not have a job. *Id.* He stated the way things were handled gave him a feeling Employer felt it was time for him to go. N.T. at 5. Cilione testified he accepted the MVSP to preserve the five percent pension increase offered as an incentive in the MVSP. N.T. at 6.

The referee concluded Cilione's fears there was a chance he would be laid off were insufficient to demonstrate necessitous and compelling cause. The referee denied benefits, and the Board affirmed.

On appeal to this Court, Cilione argues: 1) he proved necessitous and compelling cause to terminate his employment; 2) the Board capriciously disregarded two newspaper articles he submitted as evidence; 3) Employer failed to prove continuing work was available to him; and 4) his constitutional right to confront witnesses was violated when Employer failed to appear for the hearing.

■ With respect to Cilione's first argument, Cilione testified he felt he would lose his job if he did not accept the MVSP. Where, as here, the Employer did not specifically tell the claimant that he would be laid off and continuing work remained available, such speculation about his future prospects does not amount to necessitous and compelling cause to terminate his employment. *Renda.*

Cilione's next argument is the Board capriciously disregarded two newspaper articles he entered as Claimant's Exhibits 1 and 2. This argument lacks merit.

Claimant's Exhibit 1 is a newspaper article dated January 29, 2004. Cilione argues the important part of this article is the statement that, "During the last three months of 2003, Verizon cut its payroll by 21,000, or roughly 10 percent of its work force." Claimant's Exhibit 2 is an undated article from the Philadelphia Inquirer. Cilione argues the important language from that article is the statement that, "In the end, 16,000 managers out of a workforce of 152,000 were considered surplus."

We reject Cilione's argument for several reasons. First, the critical inquiry involved the circumstances surrounding Cilione's reasons for voluntarily leaving his employment. *George,* 767 A.2d 1124 (the decision to accept voluntary termination must be scrutinized under the circumstances existing at time of employee's decision). There is no indication that either of these articles was available to Cilione when he terminated his employment in November, 2003. Indeed, Exhibit 1 is dated two months after Cilione's November, 2003 leaving.

Second, the articles are written statements offered to prove the truth of their contents. As such, they are inadmissible hearsay, *see* Pa.R.E. 801, 802, unless Cilione testified he read the articles and was guided by them. He did not offer that testimony.

Third, the articles contain general information rather than information specific to Cilione's position. In the absence of any claim that Cilione read and relied upon the articles, any probative value they may have is outweighed by the danger of confusion and delay. *See* Pa.R.E. 403. Therefore, they do not compel relief for Cilione.

■ Cilione's next argument, that the Employer failed to prove continuing work was available to him, also fails. As discussed above, the Employer has no burden to put forth evidence of continuing work. The burden remained on Cilione at all

times to demonstrate necessitous and compelling cause.

In support of this argument, Cilione relies on *Northern Health Facilities v. Unemployment Comp. Bd. of Review,* 663 A.2d 276 (Pa.Cmwlth.1995) for the proposition that Employer was required to show work was available to him. However, *Northern Health* is inapplicable to this case, as it involved a union-initiated work stoppage, after which the employer hired replacement employees. *Northern Health* was analyzed under Section 402(d) of the Law, not Section 402(b), the provision applicable here.

■ Finally, Cilione argues his constitutional right to confront witnesses was denied because Employer failed to appear for the hearing but sent documents to be considered by the referee. This argument lacks merit for numerous reasons, the most obvious of which is that Cilione did not raise the issue at the hearing before the referee. *Watkins v. Unemployment Comp. Bd. of Review,* 751 A.2d 1224, 1226 (Pa.Cmwlth.2000)("An unemployment compensation claimant waives review of an issue by neglecting to raise and preserve it before the referee."). Accordingly, this argument is waived and we will not consider it on appeal.[17]

The Board did not err when it determined Cilione was not entitled to benefits, and we affirm.

## C. Robert Brown, No. 1066 C.D.2004

■ Brown was employed by Employer for approximately 38 years at the time he accepted the April 15, 2003, EISP offer. F.F. No. 1. Brown's application for benefits was denied by the UC Service Center, and he appealed.

At the hearing before the referee (that Employer did not attend), Brown testified he was employed as a switching equipment technician, one of only two at his location. N.T. February 9, 2004, at 5, 9. The other technician at his location was a union representative who had super seniority. N.T. at 9. Brown felt this left him at a greater risk for a future layoff, as Employer informed him via electronic mail the surplus included switching equipment technicians. N.T. at 7, 11; F.F. No. 5.

Brown testified he accepted the EISP offer "because of the layoffs that were present at that time, 2500 throughout Verizon, the prospects didn't seem good, especially with my situation being a low person in the building." N.T. at 10. He further stated, "I believe that, because of my situation, in a payroll location, we only had two people. That I was going to be the one that was adjusted because of the lay offs that were in effect at that time. There was no reason to think otherwise." N.T. at 11. However, Brown acknowledged he was not fired, N.T. at 6, and did not offer any testimony Employer told him his job would be eliminated if he did not accept the EISP offer. F.F. No. 6.

The referee concluded Brown failed to meet his burden to show necessitous and compelling cause for leaving his employ, and the Board affirmed. On appeal, Brown argues the Board committed an error of law when it concluded he did not meet his burden. Further, Brown argues the Board improperly considered objected-to hearsay evidence from Employer in making its determinations.

■ We discern no error. Brown's belief his job would be eliminated and his testimony his prospects for future contin-

---

**17.** To the extent the documents submitted by Employer for consideration by the referee constitute hearsay, we note the Board's find- ings rely solely on Cilione's testimony and not those documents. Accordingly, there is no reversible error.

ued employment "didn't seem good" amounts to the type of speculation that does not establish necessitous and compelling cause. *See, e.g., PECO Energy Co.* (claimant accepted early retirement package based on "postulations" of "what he felt could happen"); *Dep't of Navy v. Unemployment Comp. Bd. of Review,* 168 Pa. Cmwlth. 356, 650 A.2d 1138 (1994)(claimant "believed" his job would be eliminated). Where, as here, the Employer did not specifically tell the claimant he would be laid off, speculation about future prospects does not amount to necessitous and compelling cause to terminate employment. *See Renda.*

■ Next, Brown argues the referee's Finding of Fact No. 3, stating Brown would receive a bonus of $10,000 and enhanced pension rights for accepting the EISP offer, is unsupported by any competent evidence. Rather, Brown argues, the only support for the finding is in documents faxed to the referee from the Employer, as to which the referee sustained Brown's hearsay objection.

We agree that the challenged finding is not based on competent evidence. However, even if the finding is stricken, the remaining findings do not support relief for Brown. Therefore, the error is harmless.[18] *See, e.g., Sturpe v. Unemployment Comp. Bd. of Review,* 823 A.2d 239, 242 (Pa.Cmwlth.2003)(error harmless when it has "no effect on the outcome of [the] case"); *Hussey Copper Ltd. v. Unemployment Comp. Bd. of Review,* 718 A.2d 894 (Pa.Cmwlth.1998)(error harmless when it is not material to the outcome of the case).

Accordingly, we affirm the Board's decision to deny benefits to Brown.

## D. Sandra Scalese, No. 1085 C.D.2004

■ Scalese worked for Employer for approximately 31 years when she accepted an Income Security Plan (ISP)[19] in April, 2003. F.F. No. 1; N.T. December 1, 2003, at 4. When Scalese applied for benefits, the UC Service Center found there was no continuing work for her and she demonstrated a necessitous and compelling medical reason for accepting early retirement. C.R. No. 5. However, the Service Center denied benefits because it found Scalese was not "able and available for suitable work" under Section 401(d)(1) of the Law.[20]

Scalese appealed, and a hearing was held before a referee. Employer did not appear at the hearing. The referee found Scalese was under a doctor's care for depression, anxiety, and a nervous breakdown and was on disability since July 7, 2002. F.F. No. 2. She became aware of Employer's voluntary severance package, including a financial incentive for voluntary retirement. F.F. No. 3. Scalese returned to work for one day only, March 10, 2003, to qualify for the package. F.F. No. 4. Scalese was not informed her job would be unavailable to her if she chose not to accept the package. F.F. No. 5. Scalese was released back to work on August 16, 2003, with the caveat that she not return to her

---

18. The documents in question are the type of direct evidence of Employer communications specific to a claimant's job which pertain to imminent threats to employment. As such, they are most material to a claimant's burden of proof. The reasons for Brown's failure to offer them, and his subsequent objection to their admission, is not clear.

19. The ISP documentation is not included in the record before us.

20. Section 401(d)(1) states, "Compensation shall be payable to any employe who is or becomes unemployed, and who ... (d)(1) Is able to work and available for suitable work...." 43 P.S. § 801(d)(1).

former position with Employer. F.F. No. 6.

The referee concluded Scalese failed to demonstrate necessitous and compelling cause for voluntarily quitting her job, since her decision to accept the ISP was personal. Scalese appealed, and the Board affirmed, adopting the referee's decision.

Before us, Scalese argues: 1) her medical condition constituted necessitous and compelling cause for quitting; 2) her fears her job would be eliminated were justified and constituted necessitous and compelling cause for quitting and continuing work was not available to her; and 3) in the alternative, the case should be remanded because the referee failed to make necessary findings of fact regarding whether Scalese's disability constituted necessitous and compelling cause.

While medical reasons may constitute a necessitous and compelling reason for leaving employment, certain circumstances here are significant. Scalese was on disability leave for eight months before she accepted the offer to voluntarily retire. There was no evidence that the disability leave would not continue. Her leaving coincided with the offer to retire with significant financial incentives. The fact-finder did not find that medical reasons were the cause for Scalese's leaving, and under these circumstances, the fact-finder was not obligated to do so.

Also, the fact-finder's determination that Scalese's decision to leave was strictly personal and voluntary is supported in the record. In particular, the Employer had no work for Scalese during the time she was prohibited by her physician from working, but there was no proof that her employment relationship was in jeopardy or that,

upon medical release, the Employer would not accept her back. Further, there was no evidence, direct or circumstantial, that Scalese faced imminent involuntary separation for any reason. In these circumstances, Scalese failed to carry her burden of proving necessitous and compelling cause for her separation. We therefore affirm.[21]

### E. Richard J. Farabaugh, No. 1196 C.D. 2004

 Farabaugh worked for Employer for 39 years when he accepted the MVSP offer in November, 2003. He applied for benefits, which were denied by the UC Service Center. He appealed.

At the hearing before the referee, Farabaugh testified his workgroup was downsized to from 13 to 3 people, with Farabaugh managing two employees at the time he left. N.T. January 29, 2004 at 5. Farabaugh testified his department was undergoing conversion to a new system, which initially was to be finished by September 2003. N.T. at 6, 8. Farabaugh testified he was asked to not accept a retirement incentive package offered in 2002 so that he could stay on and help transition the department to the new system. N.T. at 6. Farabaugh testified he was told his position would be eliminated once the conversion was complete. *Id.* Farabaugh submitted a memo from a supervisor recommending Farabaugh's position be eliminated after the conversion. Claimant's Exhibit 2.

Farabaugh testified the conversion did not occur by September 2003, and instead was slated to occur in May 2004. N.T. at 15.

The Board found continuing work was available to Farabaugh. Board F.F. No.

---

21. Because we determine that Scalese failed to prove cause of a necessitous and compelling nature for her voluntary separation, we need not decide whether she was "able and available" for work.

13. The Board concluded there was no imminent threat to Farabaugh's employment where, by his own testimony, his job was secure through at least May 2004.

On appeal, Farabaugh represents himself and argues: 1) he proved necessitous and compelling cause for terminating his employment; and 2) he is being treated unfairly as other claimants who accepted voluntary early retirement incentive packages from the Employer were granted benefits.

As to Farabaugh's first argument, we discern no error. By Farabaugh's own testimony, he was asked to stay with the Employer through the completion of the conversion, which was to occur in May 2004. At the time Farabaugh accepted the MVSP offer in November 2003, the threat to his job was not imminent, as it is apparent he was able to keep his job with the Employer for at least six more months. *Gackenbach* (possibility of future termination does not amount to necessitous and compelling cause). We agree with the Board that Farabaugh did not demonstrate necessitous and compelling cause for terminating his employment.

Farabaugh's second argument also fails. The record before us contains no evidence of the disposition of other unemployment compensation claims. A careful review of the transcript of the hearing reveals Farabaugh did not attempt to introduce evidence of other former employees of Employer who accepted voluntary early retirement incentive packages but were granted benefits. Accordingly, there are no facts of record in support of Farabaugh's second argument. We affirm.

**F. Barbara L. Huntzinger, No. 1202 C.D.2004**

■ Huntzinger worked for Employer for 16 years at the time she accepted the October 2003 EISP. She applied for benefits, which were denied by the UC Service Center. She appealed.

At the hearing before the referee, Huntzinger testified it was lucrative to her to accept the EISP. N.T. February 23, 2004 at 4. She testified she did not know what job she would have in the future, the quantity of work was declining, and Employer was in a bad financial situation. N.T. at 5. She testified she did not feel comfortable her job would remain available to her if she did not accept the EISP. *Id.* Huntzinger testified, although she was covered by a CBA containing a no-layoff clause, she could have been laid off if Employer declared a surplus. N.T. at 2.

The referee concluded Huntzinger failed to demonstrate necessitous and compelling cause for terminating her employment. He denied benefits, and the Board affirmed.

On appeal, Huntzinger argues: 1) Finding of Fact No. 2, continuing work was available to Huntzinger, was based solely on hearsay; 2) she proved cause of a necessitous and compelling nature for terminating her employment; and 3) in the alternative, she is entitled to benefits based on the voluntary layoff option proviso (VLO proviso) in Section 402(b).

■ We agree the finding that continuing work was available to Huntzinger was based solely on hearsay, as its only support in the record comes from documentation submitted by Employer, which did not attend the hearing. However, because we conclude she failed to prove necessitous and compelling cause for her voluntary separation, the error is harmless.

As to proof of necessitous and compelling cause, Huntzinger testified she did not feel comfortable her job would remain if

she chose not to accept the EISP. In support, she offered circumstantial evidence to support her inference of imminent threat to her job. Thus, she testified about declining work load and the Employer's financial situation. However, we previously held similar speculation about a company's financial condition does not establish necessitous and compelling cause. *Staub.* Also, as discussed before, the fact-finder need not draw the same inference.

Huntzinger did not offer specific, direct evidence of job threat, such as the Employer's communications or actions indicating her job was in jeopardy. *See Renda.* The fact-finder may rely on direct evidence, or the lack of it, in making its determination. In our review, we consider whether the Employer specifically tells a claimant that her or she would be laid off. *Id.*

Huntzinger relies heavily on her assertion she proved Employer threatened involuntary layoffs if not enough employees accepted the EISP. This assertion relates to general, direct proof of communication from the Employer of a threat to her job. However, the record does not support this assertion. The sole reference to a general communication from Employer regarding lay offs is on Claimant's Exhibit 1, Item 1. This reference is to a prior incentive package offered in April 2003. The reference is not to the offer which Huntzinger accepted. Nothing in the record indicates Employer made a similar statement about the October 2003 EISP. Accordingly, this reference does not require us to disturb the Board's conclusion.

Huntzinger's third argument is wholly without merit. Huntzinger argues she is entitled to benefits under the VLO proviso, which states,

> [N]o otherwise eligible claimant shall be denied benefits for any week in which his unemployment is due to *exercising*

*the option of accepting a layoff,* from an available position pursuant to a labor-management contract agreement, or pursuant to an established employer plan, program or policy . . . .

43 P.S. § 802(b) (emphasis added).

Huntzinger acknowledges this Court's long history of concluding the VLO proviso does not apply where the claimant accepts an early retirement incentive package. *See, e.g., George; Flannery; Sievers v. Unemployment Comp. Bd. of Review,* 124 Pa.Cmwlth. 52, 555 A.2d 260 (1987), *aff'd,* 520 Pa. 83, 551 A.2d 1057 (1989). However, Huntzinger argues those cases were wrongly decided.

We recently revisited this issue in *Renda,* where we declined to overturn our decisions holding the VLO proviso does not apply where a claimant accepts an early retirement incentive package. *Renda,* 837 A.2d at 693–94. We decline Huntzinger's invitation to revisit the issue again. We conclude the VLO proviso does not apply to Huntzinger as the Board found she left her job to accept a voluntary early retirement package. *Renda.*

Accordingly, we conclude the Board did not err in denying Huntzinger benefits, and we affirm.

### G. Regis G. Rothrauff, No. 1264 C.D. 2004

■ Rothrauff worked for Employer for approximately eight years at the time he accepted the EISP. F.F. No. 1. Rothrauff was a union employee subject to the provisions of the CBA. F.F. No. 6. He began his employ in a sales position but later was transferred involuntarily to a billing consultant position. F.F. No. 2.

Rothrauff testified he struggled in the billing position and was threatened with dismissal, although that was not the reason he accepted the EISP. N.T. February 12,

2004, at 8. He also testified to a poor work environment in his department, although he stated that also was not the reason he accepted the EISP. N.T. at 9. He stated he accepted the EISP because, as the offer indicated, his entire department was declared surplus and, therefore, he was declared surplus. N.T. at 9–10.

Rothrauff acknowledged the CBA included a layoff protection provision. N.T. at 6. Rothrauff testified no one told him his position would be eliminated if he did not accept the EISP. N.T. at 7. In fact, Rothrauff testified, if he did not accept the EISP, he "probably" would have been moved to another building or downgraded to another position. N.T. at 14.

Employer did not appear at the hearing before the referee. The referee concluded Rothrauff did not demonstrate a necessitous and compelling reason for voluntarily leaving his employ because he did not establish an imminent threat to his employment. The referee denied benefits, and the Board affirmed.

▮ On appeal, Rothrauff represents himself and argues: 1) he did not receive a fair hearing before the referee because of an executive determination made directing all UC Service Centers to deny benefits to any Verizon employee who accepted the EISP; 2) his UC file improperly contained information regarding other Verizon employees; 3) the referee improperly refused to admit evidence submitted by Rothrauff; 4) Rothrauff provided sufficient evidence of necessitous and compelling cause for accepting the EISP.

Rothrauff waived his first two issues by failing to raise them before the referee. Nothing in the transcript from the hearing indicates Rothrauff argued to the referee either his claim was improperly predetermined or his file contained evidence from other claimants. Accordingly, because he failed to raise those issues before the referee, those issues are waived. *Watkins.*

Rothrauff's third issue, the referee improperly refused to admit evidence submitted by Rothrauff, is without merit. A careful review of the transcript of the hearing before the referee reveals no instance where the referee refused to accept testimony or documentary evidence offered by Rothrauff. Rothrauff does not direct us to where in the transcript he feels his evidence was improperly refused. Accordingly, this argument is without merit.

Rothrauff finally argues he proved cause of a necessitous and compelling nature for terminating his employment. We disagree.

In Rothrauff's brief, he alludes to a number of reasons why he demonstrated necessitous and compelling cause for terminating his employment, such as threats to his health, Employer's compromising of his ethical standards and various things that occurred after he accepted the EISP offer. Rothrauff Brf. at 16–17. However, none of these facts was admitted into evidence before the referee or the Board; accordingly, we may not rely on them on appeal.

The evidence in the record demonstrates Rothrauff's job was not in imminent jeopardy. As to specific, direct evidence of job threat, he admitted no one told him his position would be eliminated. *See Renda.* Further, he admitted the CBA included a layoff protection provision, and he concluded that he would have been moved or downgraded had he not accepted the EISP offer. As previously discussed, this job-specific information may be given more weight than the general declaration of surplus in the offer document. Accordingly, there was no error in the Board's conclusion that Rothrauff failed to establish ne-

cessitous and compelling cause for terminating his employment, and we affirm.

### H. Marianne McLaughlin, No. 1320 C.D.2004

■ McLaughlin worked for Employer as an inside sales representative for 16 months when she was offered the MVSP. McLaughlin accepted the MVSP offer and applied for benefits, which the UC Service Center denied. McLaughlin appealed.

Employer did not appear at the hearing before the referee. McLaughlin, representing herself, testified that although she was a union member, her CBA did not prohibit involuntary layoff. N.T. February 25, 2004, at 6. The referee found McLaughlin was dissatisfied with certain working conditions, including increased workload, reduction in support staff and change in the compensation plan. F.F. No. 2. McLaughlin also testified Employer deliberately misled her when it hired her as to what her yearly compensation would be. N.T. at 15–18.

McLaughlin testified she planned to resign from Employer prior to the MVSP but was unable to secure another job yet. N.T. at 18. She testified she accepted the MVSP "as a matter of timing" because she was planning to resign anyway. N.T. at 17. McLaughlin further testified, "I believe that ... I would not have had a job on Monday, November 23. Not just an assumption, but based on my knowledge and the circumstances, that there would not have been." N.T. at 18. She stated 22 out of 30 inside sales representatives accepted the MVSP, and she did not know what job the remaining 8 sales representatives were performing after the MVSP. N.T. at 18–19.

The referee found McLaughlin was,

uncertain as to what her employment status with Verizon would have been had she not accepted the voluntary separa-tion package.... [McLaughlin] speculates that she may have faced a future layoff in order to accomplish the workforce reductions, as the labor-management agreement covering the claimant's position did not prohibit the company from imposing involuntary layoffs.

F.F. Nos. 6–7. The referee concluded McLaughlin did not meet her burden to show cause of a necessitous and compelling nature, and the Board affirmed, adopting the referee's opinion.

On appeal and representing herself, McLaughlin argues she proved cause of a necessitous and compelling nature because: 1) Employer misled her as to what her compensation would be, which amounted to a substantial reduction in pay; 2) Employer made unreasonable unilateral changes to her working conditions; and 3) her fears for her job security amounted to more than mere speculation, and Employer did not offer evidence continuing work was available.

■ Unilateral changes in the conditions of employment, including changes in the compensation arrangements, may rise to a necessitous and compelling reason to voluntarily leave employment. *A–Positive Elec. v. Unemployment Comp. Bd. of Review*, 654 A.2d 299 (Pa.Cmwlth.1995). However, that is not what occurred here. The referee explained:

Although the claimant suggests that there were numerous work-related dissatisfactions that caused her to accept the package, she did not resign her employment prior to accepting the offer by the employer to voluntarily separate. Inasmuch, the impetus to have claimant separate was the employer's offer of financial incentives.

Referee Decision 2/27/04 at 2. Thus, the fact-finder determined the voluntary separation was caused not by the other condi-

tions of employment but by the MVSP. Therefore, the Board correctly utilized the law relating to voluntary participation in an early retirement program offering financial incentives.

We conclude the Board did not err when it found McLaughlin did not meet her burden of proof as described in *Renda.* McLaughlin offered no specific, direct evidence that her employment was threatened, such as statements by the Employer. *See id.* She offered circumstantial evidence of job conditions, from which she inferred that she would not have a job if she did not accept the MVSP. As explained before, the fact-finder is not obligated to draw the same inference, and the fact-finder may rely on direct evidence, or the lack of it, in making its decision. This is particularly true here, where other circumstances involving the remaining eight sales representatives support an inference that continuing work was available. Further, as noted before, the Employer is not required to prove anything regarding this claim. Accordingly, the Board did not err in finding McLaughlin failed to meet her burden to demonstrate necessitous and compelling cause, and we affirm.

### III. Conclusion

For all the foregoing reasons, we affirm the Board's decision to deny benefits in all these consolidated appeals, with the following exception: in the case of Melody Mahoner, No. 1235 C.D.2004, we vacate and remand for the limited purpose of allowing the Board to make a credibility determination on Mahoner's testimony of no work.

### ORDER

AND NOW, this 7th day of March, 2005, the decisions of the Unemployment Com-

pensation Board of Review in the above-captioned matters are **AFFIRMED,** with the following exception: in the case of Melody Mahoner, No. 1235 C.D.2004, we **VACATE and REMAND** for limited proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority properly states that, under section 402(b) of the Unemployment Compensation Law,[1] an employee has the burden of proving that his or her unemployment was caused by necessitous and compelling circumstances, i.e., circumstances which produced real and substantial pressure to terminate his or her employment and which would compel a reasonable person to act in the same manner. (Majority op. at 3) (citing *McCarthy v. Unemployment Compensation Board of Review*, 829 A.2d 1266 (Pa. Cmwlth.2003)). However, in my view, the employee meets this burden by establishing that: (1) the employer tried to induce the employee's termination of employment by offering the employee incentives to quit; and (2) the employer was silent as to whether the employee's refusal of the offer would result in the loss of employment.

In unemployment law, one of the *reasonable* inferences that a fact-finder may draw is an adverse inference from a party's silence. *See Gancom v. Unemployment Compensation Board of Review*, 163 Pa.Cmwlth. 423, 641 A.2d 652 (1994). Likewise, where an employer offers an employee incentives to quit, with no word about the prospects of continued employment should the employee refuse the offer,

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

it is *reasonable* for the employee to fear the imminent loss of his or her employment.[2] Using the legal test in *McCarthy,* an offer of incentives to terminate employment, combined with silence about the effect of a refusal, would produce real and substantial pressure on an employee to terminate employment and would compel a *reasonable* person to act in the same manner.[3] Therefore, under those circumstances, the employee would have cause of a necessitous and compelling nature for terminating employment and would be entitled to benefits.

**Tim FINN and John J. Petrush,
Appellants**

v.

**ZONING HEARING BOARD OF
BEAVER BOROUGH and
Borough of Beaver.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2005.

Decided March 8, 2005.

**2.** Indeed, if an employer does not want to lose a particular employee, the employer would not try to entice the employee with incentives to quit. Moreover, where the incentives offered are nearly irresistible, the situation is analogous to offering candy to a baby.

**3.** I note that the employer in such a case cannot argue that the receipt of unemployment benefits in addition to the monetary incentives would be double dipping. *See Georgia–Pacific Corporation v. Unemployment Compensation Board of Review,* 157 Pa. Cmwlth. 651, 630 A.2d 948 (1993) (making a

John J. Petrush, Beaver, for appellants.

John L. Walker, Beaver, for appellee, ZHB of Beaver Borough.

William R. Hare, Beaver, for appellee, Borough of Beaver.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and FLAHERTY, Senior Judge.

distinction between unemployment benefits and other statutory payments).