# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holly Brandy,                            :
                          Petitioner     :
                                         :
             v.                          :   No. 2425 C.D. 2015
                                         :   SUBMITTED:  May 27, 2016
Unemployment Compensation Board          :
of Review,                               :
                          Respondent     :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                       **FILED:  November 22, 2016**


Claimant Holly Brandy petitions for review of an order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's decision denying her unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law,[1] which provides that an employee is ineligible for benefits during any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." We affirm.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] A determination of whether necessitous and compelling cause for a voluntary quit exists is a question of law, subject to plenary review by this Court. *Johnson v. Unemployment Comp. Bd. of Review*, 869 A.2d 1095, 1104 (Pa. Cmwlth. 2005).

Claimant worked for Employer Hunter Truck Sales & Service as a receptionist from July 2011 to June 2015. Employer operates facilities at different locations and its headquarters is in Butler. Until May 1, 2015, the staff at its Pittsburgh location included Claimant, another female, and thirty-six men. After May 1st, Claimant became the only female employed at the Pittsburgh location. In any event, after Claimant alleged that two managers had been subjecting her to sexual harassment, Employer placed her on paid leave starting May 5th in order to conduct an investigation. Ultimately, Employer discharged both managers from employment and Claimant returned to work May 26th.

Upon her return, Claimant perceived that three individuals, including her supervisor, remained on good terms with her, but that a number of other employees "were cold, shunned her, and gave her 'dirty looks.'" Finding of Fact (F.F.) No. 10. Having considered her pre-leave working environment to be normal,[3] she "became convinced that rumors which were unfavorable to her had swept through the workplace, causing her formerly cordial coworkers to resent her." Id., Nos. 11 and 12. Although the vice president of human resources, Carrie Ginocchi, and Claimant's direct supervisor, Andrew Weleski, sought to ensure that Claimant was satisfied with her working conditions and encouraged her to report incidents of retaliatory conduct, she became distressed as to how her coworkers' treatment of her had changed. Alleging that the change in her working environment caused her to become ill and require medication for her nerves, Claimant "made it clear to [Ms. Ginocchi and Mr. Weleski] on a number of occasions that she was dissatisfied with the environment to which she was being subjected." Id., No. 15. Once, when she brought her concerns to the attention of

_____

[3] Presumably, Claimant meant normal but for the alleged sexual harassment.

2

Mr. Weleski, he opined that he was uncertain as to how to address the issue and suggested that she might wish to tell her coworkers the truth.[4]  *Id*., No. 16.

On June 17th, matters came to a head when Claimant came to believe that her supervisor intended to reprimand one of the friendly managers for talking to her.  Contrary to her understanding, however, the purpose of their meeting was for the supervisor to direct the manager to respond to telephone calls that were coming in during busy times.  *Id*., No. 19.  In any event, without discussing the matter with her Employer or requesting a transfer to an alternate position or facility, Claimant tendered her resignation letter the following day.  *Id*., No. 22.  Therein, Claimant asserted that she was resigning due to the hostile work environment that she had experienced ever since making sexual harassment allegations, that her coworkers had been treating her like an outcast, that management had failed to rectify the situation despite her reports, that she was expected not to have conversations with anyone while other employees had no such restrictions, that the one person who spoke to her was reprimanded for doing so, and that she believed that she had no choice but to resign.  *Id*., No. 20.

Subsequently, Claimant applied for unemployment compensation benefits, which the UC Service Center denied.  The referee affirmed the UC Service Center's denial of benefits.  The Board affirmed, adopting and

---

[4] Pursuant to Claimant's undisputed testimony, Mr. Weleski stated: "I don't understand why they're acting like this.  I don't know how I can fix it.  Maybe if you tell them the truth they'll stop.  Tell them what really happened because they're just going by what they're hearing." August 18, 2015, Hearing, Notes of Testimony (N.T.) at 7; Reproduced Record (R.R.) at 9a. Claimant responded that, "I don't feel I should have to defend myself to them.  I didn't do anything wrong." *Id*. at 8; R.R. at 10a.

3

incorporating the referee's findings and conclusions.[5]   Additionally, despite expressing sympathy for Claimant's plight, the Board, in pertinent part, found:

> [C]laimant did not make a reasonable effort to preserve the employment relationship prior to quitting.  [She] testified that she believed that the manager was reprimanded for talking to her . . . and this incident is what prompted her to quit her employment; however, [she] made no effort to discuss her beliefs with the employer prior to turning in a resignation notice on June 18, 2015.   [Her] last communication with human resources occurred on June 3, 2015 . . . . [She] has not demonstrated that it would have been futile to address her concerns with the employer prior to resigning, especially in light of the fact that the employer credibly testified that it requested the claimant to report specific incidents of what she perceived to be retaliation in the workplace. Finally, [she] did not credibly establish that she had to quit for any medical reason.

November 3, 2015, Board Decision at 1.   Accordingly, acknowledging that Claimant was clearly unhappy working for Employer, the Board nonetheless concluded that her subjective concerns, such as coworkers talking to her only about business and not personal matters, did not rise to the level of necessitous and compelling cause for a voluntary quit.  *Id.*  Claimant appealed the Board's order and Employer intervened in the appeal to this Court.[6]

A claimant in a voluntary quit case bears the burden of proving that his or her separation from employment was involuntary.  *Bell v. Unemployment Comp. Bd. of Review*, 921 A.2d 23, 26 (Pa. Cmwlth. 2007).   An employee has voluntarily quit for unemployment compensation benefit purposes when he or she resigns, leaves, or quits without action by the employer.  *Lee v. Unemployment*

---

[5] It is within the Board's province to determine credibility and evidentiary weight.  *Oliver v. Unemployment Comp. Bd. of Review*, 5 A.3d 432, 438 (Pa. Cmwlth. 2010).

[6] The Board indicated that it would not be filing a brief in this matter.

4

*Comp. Bd. of Review*, 33 A.3d 717, 720 (Pa. Cmwlth. 2011). An employee who voluntarily terminates his or her employment bears the burden of proving necessitous and compelling cause for leaving his or her job. *Brunswick Hotel & Conf. Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). Specifically, the employee must establish that: "(1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve her employment." *Id*. at 660.

On appeal, Claimant maintains that the Board erred in focusing on the alleged reprimand of the friendly employee as the incident prompting her to quit and, instead, should have concentrated on the retaliatory behavior that she experienced after alleging sexual harassment and returning from a leave of absence. She emphasizes that she reported both the initial sexual harassment by the two managers and the subsequent hostility that she experienced upon her return to work. In addition, she notes that an employee is expected to tolerate only a certain level of conduct, that not all of the responsibility to resolve a situation is placed on him or her, and that an employer ultimately bears the responsibility for eliminating harassment in the workplace. *Comitalo v. Unemployment Comp. Bd. of Review*, 737 A.2d 342, 345 (Pa. Cmwlth. 1999). Accordingly, alleging that she took the necessary common sense action of reporting her coworkers' retaliatory conduct and that Employer did nothing to alleviate the hostile work environment,

she argues that the Board erred in determining that she failed to establish necessitous and compelling cause for her voluntary quit.[7]

As the record reflects, Claimant resigned due to the allegedly hostile work environment that ensued after her leave of absence and culminated in her mistaken belief that a manager was reprimanded for talking to her. Regardless of whether a reprimand occurred, Claimant perceived that final incident to be indicative of the hostile work environment that resulted from her report of sexual harassment and Employer's discharge of two managers. To that end, although we acknowledge case law indicating that the incident precipitating the voluntary quit should be the focus of the inquiry as to whether there are necessitous and compelling grounds for a voluntary quit,[8] the timeline of events in the present case is fairly condensed. Accordingly, without concentrating overly much on whether that final incident, alone, would have been sufficient to constitute necessitous and compelling grounds for a voluntary quit, we turn to determining whether Claimant's work environment was sufficiently intolerable such that it constituted necessitous and compelling cause for her voluntary resignation.

Like the Board, we sympathize with Claimant's situation. Her undisputed testimony indicates that formerly friendly coworkers childishly turned their heads when she walked by, gave her dirty looks, made exchanging paperwork

---

[7] While it is true, as Claimant maintains, that sexual harassment may constitute necessitous and compelling cause for a voluntary quit, *Collier Stone Co. v. Unemployment Compensation Board of Review*, 876 A.2d 481, 484 (Pa. Cmwlth. 2005), the record does not reflect that the initial sexual harassment that she experienced was the reason for her voluntary quit. Accordingly, we reject Claimant's implication that sexual harassment constituted necessitous and compelling cause for her resignation.

[8] *See, e.g., Hussey Copper, Ltd. v. Unemployment Comp. Bd. of Review*, 718 A.2d 894, 899 (Pa. Cmwlth. 1998) (holding that, "unless the precipitating event gave Claimant a necessitous and compelling reason to quit, then benefits should be denied.")

awkward, pretended that she had not spoken, and did not include her in the collective lunch order that she previously had orchestrated. August 18, 2015, Hearing, Notes of Testimony (N.T.) at 7, 9; Reproduced Record (R.R.) at 9a, 11a. This unpleasant working atmosphere, however, is not tantamount to unbearable or unendurable working conditions. It is well established that normal workplace strains are insufficient to justify a voluntary resignation. The working conditions must be tantamount to intolerable. *Ann Kearney Astolfi DMD PC v. Unemployment Comp. Bd. of Review*, 995 A.2d 1286, 1289 (Pa. Cmwlth. 2010).

Furthermore, the Board concluded that Claimant failed to make a reasonable effort to preserve her employment because she failed 1) to discuss the final incident with Employer regarding the alleged reprimand of a friendly co-worker; and 2) to demonstrate that it would have been futile to do so. As the Board determined and the evidence reflects, Claimant's last communication with Ms. Ginocchi was June 3, 2015, well before Claimant's June 18th resignation. August 18, 2015, Hearing, Claimant's Exhibit 3 at 1; R.R. at 53a. In addition, the Board found that "the employer credibly testified that it requested the claimant to report specific incidents of what she perceived to be retaliation . . . ." November 3, 2015, Board Decision at 1. In that regard, the Board adopted the referee's decision therein concluding that "the employer made extraordinary efforts to retain the claimant and to address legitimate concerns upon her return." August 18, 2015, Referee's Decision at 3. "It is the duty of the appellate court to examine the testimony in the light most favorable to the party in whose favor the fact-finder has ruled, giving that party the benefit of all logical and reasonable inferences from the testimony . . . ." *Penn Hills Sch. Dist. v. Unemployment Comp. Bd. of Review*, 437 A.2d 1213, 1218 (Pa. 1981).

7

Finally, we address Claimant's contention that health-related issues constituted necessitous and compelling cause for her voluntary quit. In order to have a compelling health reason to quit, a claimant must establish the following: 1) competent testimony of adequate health reasons; 2) communication of those health problems to the employer; and 3) availability to work if reasonable accommodations can be made. *Astolfi*, 995 A.2d at 1290. Here, despite the fact that Claimant in her e-mail exchange with Ms. Ginocchi referenced some physical and emotional issues,[9] the Board concluded that Claimant did not credibly establish that she resigned for health reasons. November 3, 2015, Board Decision at 1. Although a claimant's own testimony and/or supporting medical documents may be sufficient to establish the existence of a medical reason for a voluntary termination, *Lee Hosp. v. Unemployment Compensation Board of Review*, 637 A.2d 695, 698 (Pa. Cmwlth. 1994), his or her evidence must constitute competent evidence that adequate health reasons existed to justify the voluntary quit. We find no error in the Board's determination and, accordingly, agree that Claimant failed to satisfy the foregoing criteria.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[9] *See* August 18, 2015, Hearing, Claimant's Exhibit 3 at 3; R.R. at 55a.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Holly Brandy, : 
                Petitioner : 
                 : 
          v. :   No. 2425 C.D. 2015
                 : 
Unemployment Compensation Board : 
of Review, : 
                Respondent : 

# **O R D E R**

AND NOW, this 22nd day of November, 2016, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holly Brandy,                                :
                          Petitioner        :
                                            :
              v.                            :
                                            :
Unemployment Compensation                   :
Board of Review,                            :    No. 2425 C.D. 2015
                          Respondent        :    Submitted: May 27, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


DISSENTING OPINION
BY JUDGE COVEY                              FILED: November 22, 2016

I respectfully dissent from the Majority's conclusion that Holly Brandy's (Claimant) "unpleasant working atmosphere . . . is not tantamount to unbearable or unendurable working conditions[,]" Majority Op. at 7, and that Hunter Truck Sales & Service (Employer) "made extraordinary efforts to retain [C]laimant and to address legitimate concerns upon her return." *Id.* (quoting Referee Dec. at 3). Because the Referee's findings of fact (FOF) are internally inconsistent and do not support the Unemployment Compensation (UC) Board of Review's (UCBR) conclusions that Claimant did not try to preserve her employment and that the last incident was her sole reason for resigning, I would reverse the UCBR's order affirming the Referee's decision denying Claimant UC benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to voluntarily leaving work without cause of a necessitous and compelling nature).

Initially, herein the Referee specifically found:

15. **[C]laimant made it clear to the individuals[, the vice president of human resources and Claimant's direct supervisor,**[2]**] on a number of occasions** that she was dissatisfied with the environment to which she was being subjected.

16. When [C]laimant brought concerns to the attention of **her direct supervisor**, he **indicated that he was uncertain of how to address the matter** and suggested that [C]laimant may wish to tell her co[-]workers the truth.

. . . .

20. **[C]laimant did not discuss this matter with [E]mployer prior to tendering her resignation letter** June 18, 2015, which includes the following, 'I am sending this letter to inform you of my immediate resignation for my position . . . .  Unfortunately my resignation is due to the hostile work environment I've been experiencing since turning in the sexual harassment I endured for years, I no longer can keep coming into work under these conditions.  I have been ousted by the other employees.  I have reported these actions to the proper management multiple times with no action taken to rectify it.  **Also today the only person in parts who has talked to me got yelled at for stopping by my desk for a minute** and was told he is not allowed to do that yet all the men are allowed to stop and talk to anyone at any time with nothing being said, yet the one person who defended me and talks to me was yelled at for stopping for a minute.  **I have been treated extremely different since returning to work**. I have forced myself to sit there day after day with anxiety due to being treated like an outcast.  I am expected to have no conversations with anyone while there are no restrictions for any other employees.  I feel I have no choice and that I am being forced to resign. . . .'

21. [C]laimant elected to resign **only after coming to the conclusion that the manager who was speaking with her was reprimanded for doing so**.

---

[2] *See* Referee Dec. at 2, FOF 14.

Referee Dec. at 2 (emphasis added). Clearly, FOF 15 - Claimant made it clear on a number of occasions that she was dissatisfied with her work environment - is contrary to FOF 20 - Claimant did not discuss the matter prior to tendering her resignation. Further, FOF 21 - Claimant elected to resign only after the final incident - is contrary to FOF 20 - Claimant's "resignation is due to the hostile work environment I've been experiencing since turning in the sexual harassment I endured for years." *Id.* Moreover, the UCBR's conclusion that "[C]laimant did not make a reasonable effort to preserve the employment relationship prior to quitting[]" is also contrary to the Referee's FOFs and the record evidence. UCBR Dec. at 1.

Next, the Majority categorizes Claimant's co-workers' actions as "**childish**[]" and concludes that "[t]his **unpleasant working atmosphere** . . . is not tantamount to unbearable or unendurable working conditions [because] . . . normal workplace strains are insufficient to justify a voluntary resignation." Majority Op. at 6, 7 (emphasis added). However, in reaching this conclusion the Majority disregarded the fact that Claimant's co-workers ignored her, made it so difficult for her to do her job that she was having panic attacks and taking Xanax, *see* Reproduced Record (R.R.) at 11a,[3] and were telling other co-workers that Claimant was having sex with the discharged employee. *See* R.R. at 10a; *see also* FOF 11, which minimizes this record evidence ("[C]laimant became convinced that rumors which were unfavorable to her had swept through the workplace[.]"). Yet, this testimony is undisputed.

Last, it is perplexing that, in the face of the Referee's FOF 16, the UCBR concluded that Claimant did not try to preserve her employment. *See* R.R. at 9a; *see also* FOF 16 - "When [C]laimant brought concerns to the attention of her direct

---

[3] *See also* Referee Dec. at 2, FOF 13 ("[C]laimant was greatly distressed by how her treatment had changed upon her return and concludes that it caused her to become ill and to require medication to control her nerves.").

AEC - 3 -

supervisor, he indicated he was uncertain how to address the matter . . . ." The Referee specifically found that Claimant discussed her complaints with her direct supervisor as well as Employer's human resources' vice president who similarly did nothing to alleviate the hostile working conditions. Certainly, under such circumstances, it is reasonable for Claimant to believe that any further attempts to change her work environment and, thus, preserve her employment, would be futile.

As this Court explained in *Comitalo v. Unemployment Compensation Board of Review*, 737 A.2d 342 (Pa. Cmwlth. 1999):

> Before quitting, [Claimant] advised [her direct supervisor] about [her co-workers'] retaliatory harassment and the hostile behavior of her co-workers, but [her direct supervisor] merely suggested that [Claimant tell her co-workers the truth about her sexual harassment] rather than taking immediate action under the circumstances presented to protect [Claimant] from further harassment. Employer postulates that [her direct supervisor's] response was appropriate and that [Claimant] had the burden to take steps to retain her job. Notwithstanding Employer's position, [Claimant] believed that Employer would not sufficiently remedy her current situation in view of Employer's earlier response and the failure of [her direct supervisor] to indicate that Employer would act to resolve the current harassment against her. **The Court cannot say that these circumstances would not produce real and substantial pressure to terminate one's employment and would not compel a reasonable person to act any differently.**

*Id.* at 345 (emphasis added); *see also Mercy Hosp. of Pittsburgh v. Unemployment Comp. Bd. of Review,* 654 A.2d 264, 266-67 (Pa. Cmwlth. 1995) ("[B]ecause the pressure to terminate employment was real and substantial, and because the employer could not alleviate the harassment after the claimant provided the requisite notice, the [UCBR] did not err in concluding that the claimant had good cause for voluntarily quitting.").

The Referee found as a fact: "[**C**]**laimant did not request** nor was she offered **a transfer to an alternate position or facility** in which she would not be required to interact with the individuals whom she feels had treated her poorly." Referee Dec. at 2, FOF 22 (emphasis added); *see also* Referee Dec. at 3 ("By failing to request an alternate position and/or an alternate worksite, [C]laimant did not satisfactorily exhaust reasonable alternatives.  It is not [E]mployer's responsibility to offer such a position under these circumstances, rather it is [C]laimant's burden to exhaust alternatives.").    The law is well-established that it is unlawful to retaliate against or treat someone differently for having filed a sexual harassment complaint. *See* Section 5(d) of the Pennsylvania Human Relations Act (PHRA);[4] Section 704(a) of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-3(a).[5]  Moreover, **it is contrary to common decency and repugnant that** after Employer placed Claimant on leave pending investigation of her sexual harassment complaint, the UCBR determined that in order to preserve her employment **Claimant was required to ask for a transfer**.  "[T]here is a certain level of conduct that an employee will not be required to tolerate and **the Court will not place all responsibility upon an**

---

[4] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 955(d).  Section 5(d) of the PHRA states that it shall be unlawful: "For any person, [or] employer, . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by [the PHRA], or **because such individual has made a charge**, testified or assisted, in any manner, in any investigation, proceeding or hearing **under** [**the PHRA**]." 43 P.S. § 955(d) (emphasis added). While the Dissent recognizes that Claimant filed her sexual harassment complaint under Employer's sexual harassment policy, the rationale is the same as Claimant had the right to file a sexual harassment claim under state and federal law.

[5] Section 704(a) of Title VII provides:
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual, . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or **because he has made a charge**, testified, assisted, **or participated in any manner in an investigation**, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a) (emphasis added).

**employee to resolve his or her work dilemma**.  **Ultimately the employer bears the responsibility for eliminating harassment against employees in the workplace**.” *Collier Stone Co. v. Unemployment Comp. Bd. of Review,* 876 A.2d 481, 484 (Pa. Cmwlth. 2005) (emphasis added) (quoting *Comitalo*, 737 A.2d at 345).  Claimant is not to be **adversely affected** for filing a sexual harassment complaint.  *See* 43 P.S. § 955(d); 42 U.S.C. § 2000e-3(a).  Employer’s actions herein are even more egregious because its sexual harassment investigation substantiated Claimant’s sexual harassment complaint and Employer discharged the harassers for their unlawful conduct.

Because the record evidence clearly reveals that despite Claimant’s numerous complaints, Employer did not attempt to alleviate the harassment directed toward Claimant and Claimant’s circumstances produced a real and substantial pressure to terminate her employment, I would reverse the UCBR’s order.

_____
ANNE E. COVEY, Judge